UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAN XIONG WANG,

Petitioner,

v.

TODD BLANCHE et al.,

Respondents.

Case No. 1:26-cv-2165

Honorable Hala Y. Jarbou

**OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

**Discussion**

## I. Procedural History

The habeas petition challenges the lawfulness of Petitioner's current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner under his prior order of supervision. (Pet., ECF No. 1, PageID.12.) In an order entered on August 3, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on August 6, 2026, (ECF No. 4), and Petitioner filed his reply on August 10, 2026, (ECF No. 5).

## II. Factual Background

Petitioner is a native of China. (Pet., ECF No. 1, PageID.4.) Petitioner entered the United States in 1994, using a Chinese passport that was not issued to him. (*Id.*) "He was detained until April 4, 1994, and then released while he pursued an application for asylum." (*Id.*) On June 19, 2008, an Immigration Judge denied Petitioner's applications for asylum and "ordered him removed to China." (*Id.*, PageID.5.) "The Board of Immigration Appeals (BIA) dismissed his appeal on September 4, 2008, making the removal order administratively final." (*Id.*)[1] The BIA later denied a motion to reopen the removal order on September 22, 2010. (*Id.*) ICE detained Petitioner during the 90-day statutory removal period. (*Id.*) On December 1, 2008, ICE released Petitioner on an Order of Supervision. (*Id.*)

On January 27, 2026, ICE agents arrested Petitioner when Petitioner reported to the Detroit ICE office for a check-in. (*Id.*, PageID.6.) ICE issued a Notice of Revocation of Release to Petitioner on the same day. (Courtney Decl. ¶ 15, ECF No. 4-1, PageID.41.) On January 29, 2026, an ICE agent conducted an Alien Informal Interview upon Revocation of Order of Supervision pursuant to 8 C.F.R. §§ 241.4(l) and 241.13(l) with Petitioner. *See Wang v. Bondi et al*. (*Wang I*), No. 1:26-cv-821 (W.D. Mich. Apr. 24, 2026), (ECF No. 5-6, PageID.118.)

On March 12, 2026, ICE submitted a Travel Document Request for Petitioner to the ICE Headquarters Removal Management Division (RMD). (Courtney Decl. ¶ 18, ECF No. 4-1, PageID.41.) On July 17, 2026, ICE RMD advised ICE that Beijing officials could not verify Petitioner's nationality based on the March 2026 travel document request. (*Id.* ¶ 20, PageID.42.) ICE RMD submitted a new digital request to Beijing officials to assist with verifying Petitioner's

[1] For the purposes of 8 U.S.C. § 1231(a), a removal order "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals (BIA) affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

nationality for travel document issuance. (*Id.*) ICE is actively working with ICE RMD to obtain travel documents for Petitioner to effectuate his removal to China (*Id.* ¶ 22, PageID.42.)

## III. Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV. Merits Discussion

### A. Detention Under § 1231

The parties agree that because Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. (*See* Pet., ECF No. 1, PageID.8–10; Resp., ECF No. 4, PageID.29–31.) However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (Pet., ECF No. 1, PageID.11–12.) In response, Respondents argue that Petitioner's continued detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). (*See* Resp., ECF No. 4, PageID.31–33.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final in 2008. The 90-day removal period following the order expired well before

Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that following the removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled a total of six months in detention. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[2] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

In this case, Petitioner was taken into custody by ICE on January 27, 2026, and as of July 27, 2026, Petitioner had been in custody for six months. Petitioner argues that there is a good reason to believe that no significant likelihood of removal exists because he has had a final order of removal since 2008, and Respondents continue to be unable to remove Petitioner, as demonstrated by Respondents' inability to remove Petitioner in the intervening years between 2008 and the present because of the lack of required travel documents. Respondents assert that on March 12, 2026, "ICE Headquarters submitted a complete Travel Document Request to the ICE Headquarters Removal Management Division (RMD)." (Courtney Decl. ¶ 18, ECF No. 4-1, PageID.41.) On July 17, 2026, ICE RMD advised ICE that Beijing officials could not verify

[2] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

Petitioner's nationality based on the March 2026 travel document request. (*Id.* ¶ 20, PageID.42.) ICE RMD then submitted a new digital request to Beijing officials to assist with verifying Petitioner's nationality for travel document issuance. (*Id.*) Respondents further indicate that ICE is actively working with ICE RMD to obtain travel documents for Petitioner to effectuate his removal to China. (*Id.* ¶ 22, PageID.42.)

As noted above Petitioner has been detained for six months; however, considering that Respondents are actively working to remove Petitioner and have updated their request to establish Petitioner's nationality to Beijing officials in July 2026, the Court concludes that based on the present record, Respondents have "respond[ed] with evidence sufficient to rebut" Petitioner's argument that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

**B. Revocation of the Order of Supervision**

In addition to challenging his detention, Petitioner argues that his prior Order of Supervision was improperly revoked. (Pet., ECF No. 1, PageID.10; Reply, ECF No. 5, PageID.55-56.) Prior to the current detention, Petitioner was last released from detention on February 18, 2020, with an Order of Supervision consistent with § 1231(a)(6).

The government has promulgated regulations in the Code of Federal Regulations concerning the release of noncitizens who are subject to a final removal order. *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13. These regulations—specifically, §§ 241.4 and 241.13—also govern the revocation of such noncitizens' release. The agency must comply with the applicable regulatory and statutory requirements. *See, e.g., United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), *superseded in part by statute on other grounds as recognized in Dept. of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 135 (2020) ("[A]s long as the regulations

remain operative, the Attorney General denies himself the right to sidestep" those regulations.).

As the Sixth Circuit Court of Appeals has explained:

> The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates. *See Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *Service v. Dulles*, 354 U.S. 363, 372 (1957); *Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). An agency's failure to follow its own regulations 'tends to cause unjust discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before the agency, 'even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed.' *Vitarelli*, 359 U.S. at 547 (Frankfurter, J., concurring); *see also* Note, *Violations by Agencies of Their Own Regulations*, 87 Harv. L. Rev. 629, 630 (1974) (observing that agency violations of regulations promulgated to provide parties with procedural safeguards generally have been invalidated by courts).

*Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir.1998)).

Title 8 C.F.R. § 241.4 generally governs the continued detention of noncitizens under a final order of removal. Section 241.4(l)(2) provides:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4.

Section 241.13 governs the detention of noncitizens under a final order of removal where "there is no significant likelihood of removal in the reasonably foreseeable future." § 241.13(b). If the noncitizen was released pursuant to § 241.13, release may be revoked if, "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2).

Further, the regulations governing release provide that, "[u]pon revocation of release," the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i). "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.13(i). Courts examining the requirements for revocation of release following a final order of removal have consistently held that the procedural requirements of notice and an interview are required for revocation of a noncitizen's release. *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (collecting cases; citations omitted).

Here, Respondents provided Petitioner with the notice of the reasons for the revocation of his release "[u]pon revocation" on January 27, 2026. (Courtney Decl. ¶ 15, ECF No. 4-1, PageID.41; Notice of Revocation, *Wang I*, ECF No. 5-4, PageID.112–13.) The notice provides that: (1) Petitioner willfully failed to obtain a travel document for removal to China, and (2) "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." Notice of Revocation, *Wang I*, (ECF No. 5-6, PageID.112.) The

Notice also states that: "ICE is seeking a travel document to effect your expeditious removal to China." (*Id.*)

On January 29, 2026, Respondents provided Petitioner with an informal interview as required by 8 C.F.R. § 241.4(l)(1) and 8 C.F.R. § 241.13(i). Alien Informal Interview, *Wang I*, (ECF No. 5-6, PageID.118.) The interviewing officer verifies that Petitioner was provided an opportunity to respond to the reasons for the revocation of his Order of Supervision as stated in the notification letter. (*Id.*)[3] Based on the evidence before the Court, it appears that Respondents complied with the applicable regulations, and the revocation of Petitioner's Order of Supervision provides no grounds for relief.

**Conclusion**

For the reasons discussed above, the Court will enter a judgment denying Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice. (ECF No. 1.)

Dated: August 28, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE

[3] The section for Petitioner to provide a response is blank, but Petitioner does not assert that he was not allowed or prevented from participating in the informal interview process. *See Wang II*, (Pet., ECF No. 1, PageID.10; Reply, ECF No. 5, PageID.55–56.)